**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JAMES PENNINGTON, | : | |
| | : | Civil Action No. 08-975(MLC) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MICHELLE RICCI, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

JAMES PENNINGTON, Petitioner <u>pro se</u>, #264228/SBI #687726A
New Jersey State Prison, P.O. Box 861, Trenton, N.J. 08625

SIMON LOUIS ROSENBACH, ESQ., MIDDLESEX COUNTY PROSECUTOR'S OFFICE
25 Kirkpatrick Street, 3rd Floor, New Brunswick, N.J. 08901
Counsel for Respondents

**COOPER**, District Judge

Petitioner, James Pennington, a convicted state prisoner currently confined at the New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his New Jersey state court conviction and sentence. For the reasons stated herein, the Petition will be denied for lack of substantive merit.

**I.  BACKGROUND**

**A.  Statement of Facts**

The facts here are recounted below. This Court, affording the state court's factual determinations the appropriate deference, <u>see</u> 28 U.S.C. § 2254(e)(1), will reproduce the factual recitation as set forth in the New Jersey Supreme Court's

Opinion, decided on July 14, 1998, as to petitioner's direct

appeal from his New Jersey state court conviction and sentence:

This appeal involves four criminal episodes that occurred in 1992 on November 22, December 8, and December 15, at the Marriott Residence Inn and the Ramada Inn, both of which are located on the Route 1 Princeton-South Brunswick corridor.

On November 22, 1992, James R. Linsell, the Residence Inn chief engineer responsible for maintaining the hotel's physical plant, spent the night in Room 1412. Between 5:00 and 5:30 a.m., defendant burglarized that room while armed with a knife that he used to threaten Linsell.  Defendant gained entry into the room by knocking on the door and pretending to be one of the hotel's security staff.  When Linsell opened the door, defendant forced his way inside.

Also on November 22, 1992, Derrick Kysar and Vincent Lyles occupied Room 541 at the Ramada Inn, approximately 1.7 miles from the Residence Inn.  During the early morning hours of that day, defendant burglarized Room 541 and robbed Kysar and Lyles of their money and other property while threatening them with a knife.  Defendant tied their hands with rope and taped their feet together to facilitate his escape.

The third episode occurred on December 8, 1992, while Barbara G. Dreher of Texas was staying in Room 1113 at the Residence Inn.  Defendant allegedly burglarized her room while she was not present and stole jewelry and several credit cards.  The fourth episode occurred seven days later, on December 15, 1992, when defendant pushed Aline Dossous, a housekeeping employee at the Residence Inn, into Room 421 and struggled with her.  She managed to free herself and escape.

The episodes were tried under two indictments returned by two Grand Juries sitting in Middlesex County.  Defendant was first indicted under Indictment # 224-01-93 which did not include charges of kidnaping, robbery, or criminal restraint.  Approximately fourteen months later, however, Indictment # 432-3-94 was returned charging defendant separately for the offenses related to Lyles and Kysar, including kidnaping and robbery.  The second indictment superseded six counts of

the first indictment.  The indictments were consolidated for trial.

Defendant was tried on six charges under Indictment # 224-01-93 that involved Linsell, Dreher and Dossous as victims:

Count One-second-degree burglary while armed with a weapon, against Linsell, contrary to <u>N.J.S.A.</u> 2C:18-2;

Count Two-fourth-degree unlawful possession of a weapon (knife), in conjunction with Count One, contrary to <u>N.J.S.A.</u> 2C:39-5d;

Count Three-second-degree possession of weapon (knife) for an unlawful purpose, in conjunction with Count One, contrary to <u>N.J.S.A.</u> 2C:39-4d;

[Counts Four through Nine that related to Lyles and Kysar were dismissed prior to trial and were superseded by the charges filed in Indictment # 432-3-94];

Count Ten-third-degree burglary against Dreher, contrary to <u>N.J.S.A.</u> 2C:18-2;

Count Eleven-third-degree theft by unlawful taking of Dreher's property, contrary to <u>N.J.S.A.</u> 2C:20-3; and Count Twelve-second-degree burglary (Dossous) alleging bodily injury, contrary to <u>N.J.S.A.</u> 2C:18-2.

Under Indictment # 432-3-94, relating to Lyles and Kysar, defendant was tried on the following offenses:

Count One-second-degree burglary, contrary to <u>N.J.S.A.</u> 2C:18-2;

Counts Two and Three-first-degree armed robbery, contrary to <u>N.J.S.A.</u> 2C:15-1;

Counts Four and Five-first-degree kidnaping, contrary to    <u>N.J.S.A.</u> 2C:13-1b;

Counts Six and Seven-third-degree criminal restraint, contrary to <u>N.J.S.A.</u> 2C:13-2b;

Count Eight-third-degree possession of a weapon (knife) for an unlawful purpose, contrary to <u>N.J.S.A.</u> 2C:39-4d;

Count Nine-fourth-degree unlawful possession of a weapon, contrary to <u>N.J.S.A.</u> 2C:39-5d.

Under Indictment # 224, the jury found defendant guilty of second-degree burglaries of Linsell, the first victim, and Dossous, the housekeeper, fourth-degree unlawful possession of a knife, second-degree possession of the knife for an unlawful purpose, and receiving stolen property, a disorderly persons offense.  He was acquitted of burglarizing the room of the third victim, Dreher.  After properly merging some of the offenses,

3

defendant was sentenced on each of the two second-degree burglaries to consecutive ten year terms of imprisonment with five years of parole ineligibility.  The court found two aggravating factors: the risk that defendant will commit another offense and the need for deterrence. The court also found that Dossous was frightened.  There were no mitigating factors.

Under Indictment # 432, charging the more serious offenses against the two victims robbed at knife point and confined to their room (the kidnapings), the jury found defendant guilty on all charges.  Prior to sentencing, the prosecutor filed a motion to have defendant sentenced to an extended term as a persistent offender.  Although the prosecutor's motion did not specify the offense for which an extended term was sought, the motion papers and transcript of the motion proceedings reveal that the prosecutor sought to have defendant sentenced to an extended term for kidnaping pursuant to N.J.S.A. 2C:44-3a and N.J.S.A. 2C:43-7a. Defendant's status as a persistent offender was based on his age at the time the instant offenses were committed, two prior convictions for offenses on two separate occasions that were committed at different times when he was at least eighteen years old, and the fact that the present offenses occurred within ten years of his release on parole.

The prosecutor relied upon the following two prior convictions in support of the motion:
a) On July 10, 1978 defendant was sentenced on Count Two of Middlesex County Indictment 519-76, of Rape While Armed, N.J.S.A. 2A:138-1,:151-5; Somerset County Indictment 126-77J, Robbery, N.J.S.A. 2A:141-1; Somerset County Indictment 142-77J, Armed Robbery, N.J.S.A. 2A:141-1,:151-5; and Somerset County Indictment 143-77J, Armed Robbery, N.J.S.A. 2A:141-1,: 151-5.
b) On June 1, 1987, defendant was sentenced on Counts One, Two and Three of Middlesex County Indictment 333-3-86, charging Burglary, N.J.S.A. 2C:18-2; Aggravated Assault, N.J.S.A. 2C:12-1b(2); and Possession of a Weapon for an Unlawful Purpose, N.J.S.A. 2C:39-4d.

During a sentencing hearing conducted on August 25, 1994, defense counsel conceded that defendant was statutorily eligible for a discretionary extended term as a repeat offender pursuant to N.J.S.A. 2C:44-3a because defendant had at least two prior convictions for

4

two crimes committed at different times after his eighteenth birthday.

When granting the State's motion, the sentencing court concluded that it would impose an extended term on the kidnaping offenses primarily because of the need for deterrence for the public's protection.  Although not explicit, it is implicit from the sentencing transcript that the trial court was aware that extended term sentencing involves a multi-step process.

Counsel for defendant argued that the maximum extended term penalty for first-degree kidnaping was "life with parole ineligibility for twenty-five years. The presumptive sentence would be fifty years with parole ineligibility of twenty years.  And the minimum sentence would be twenty years.  [There is a] vast range left in the discretion of the court [in which] the sentence should fall."  Counsel urged the court not to impose a life sentence because defendant did not physically harm the victims, and he was not armed with a firearm when committing the kidnapings. Counsel maintained that the kidnaping "was as close to the borderline as you can possibly get" and that the duration of the restraint lasted only minutes.  The prosecutor, on the other hand, urged the court to sentence defendant for kidnaping "to imprisonment for the maximum term that is authorized in this case which is thirty years to life."

On Indictment # 432, the court imposed three extended terms. For the second-degree burglary of Lyles and Kysar's room, the court imposed a term of twenty years and concurrent terms of life with twenty-five years of parole ineligibility on the first-degree kidnapings.  The court explained that it imposed twenty-five years of parole ineligibility because it was the court's impression that the statute required those parole bars for an extended term of life.  The court either merged or imposed concurrent terms on the other offenses.  The aggregate sentence on the two indictments was life plus twenty years with thirty-five years of parole ineligibility.

State v. Pennington, 154 N.J. 344, 348-52 (1998).

**B.    Procedural History**

Petitioner was tried before a jury and the Honorable John S. Kuhlthau, J.S.C., on April 8, 1994, April 11, 1994, April 12, 1994, April 13, 1994 and April 14, 1994.  Prior to trial, on April 5 and 6, 1994, Judge Kuhlthau heard testimony on out-of-court identification procedures, petitioner's statements to police, and the search of his vehicle.  The court ruled that all of the evidence at issue would be admissible at trial.  On April 14, 1994, the jury returned a verdict of guilty on all charges except one count of burglary.

On August 25, 1994, petitioner was sentenced.  He filed a direct appeal, and on May 22, 1997, the New Jersey Appellate Division affirmed the conviction but reversed and remanded the matter for resentencing, finding that the aggregate sentence was so excessive as to shock the judicial conscience.  On September 8, 1997, the New Jersey Supreme Court denied the petition for certification.  There was a dissent to the majority opinion, and as of right, the State petitioned for certification, which was granted.  On July 14, 1998, the Supreme Court affirmed all of petitioner's convictions and the sentence of life on one count of kidnapping; reversed the Appellate Division's holding that the pretrial plea offer may be considered when determining whether one or more sentences excessive; and remanded the case to the trial court for reconsideration of certain sentencing issues.

Petitioner was re-sentenced on October 15, 1999, to a term of 25 years to life on one count of kidnaping, with all other counts merging and running concurrent.

On August 13, 1999, petitioner filed his first petition for post-conviction relief ("PCR") in state court.  A PCR hearing was conducted on April 20, 2001.  A second hearing with arguments was held on September 28, 2001, and the court denied petitioner's request for an evidentiary hearing and summarily denied relief on the PCR petition.  Petitioner filed an appeal, and on November 18, 2003, the Appellate Division affirmed the denial of post-conviction relief.  On February 13, 2004, the New Jersey Supreme Court denied certification.

On April 26, 2004, petitioner filed his second state PCR petition.  The PCR petition was denied by Order dated December 8, 2005.  Petitioner again appealed the decision, and the Appellate Division affirmed the PCR denial in an unpublished opinion on January 17, 2008.  The New Jersey Supreme Court denied certification on May 6, 2008.

On February 25, 2008, while his second state PCR appeal was on certification to the New Jersey Supreme Court, petitioner filed a petition for habeas relief under 28 U.S.C. § 2254.  On April 17, 2008, an Order was entered granting petitioner's motion to withdraw his habeas petition while he exhausted his state court remedies.  On or about September 26, 2008, petitioner re-

7

filed his federal habeas petition, but the matter was initially docketed under a separate civil number, Pennington v. Ricci, No. 08-4796 (MLC).  The second action was consolidated with this action, No. 08-975 (MLC).  On October 8, 2008, the Court received petitioner's letter request to clarify that his petition filed under the second docket number, No. 08-4796 (MLC), be considered as his one, all-inclusive habeas petition.

The State answered the petition on December 19, 2008, and provided the relevant state court record.  Petitioner has not filed any reply or traverse.

## II.  STATEMENT OF CLAIMS

Petitioner raises the following claims for habeas relief in his petition:

Ground One:  Ineffective assistance of trial counsel.

Ground Two:  The statutory elements of the kidnaping offense were not satisfied.

Ground Three: Ineffective assistance of state PCR counsel.

Ground Four: Excessive sentence was imposed on resentencing.

For the sake of inclusiveness, this Court also considers petitioner's first claim asserted in his original petition filed on or about February 25, 2008, which was not repeated in his second petition, that the admission of testimony of impermissibly suggestive identification procedures violated petitioner's right to due process.

8

The State contends that the petition should be denied for lack of substantive merit.  The State agrees that all claims raised by petitioner were presented for state court review.  The State also does not assert that the petition is untimely.

In reviewing the claim asserted by petitioner in Ground Three, alleging ineffective assistance of his state PCR counsel, this Court denies habeas relief, pursuant to 28 U.S.C. § 2254(i), because such claim is not cognizable in a federal habeas action under § 2254.  Furthermore, to the extent that petitioner also claims that the state PCR court erred in ordering a limited hearing, see Ground Three in petitioner's first habeas petition, such claim is not cognizable here because allegations of infirmities in a state PCR proceeding do not raise constitutional questions in a federal habeas action.  See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation").  Errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief.  Id.  Furthermore, as a general rule, matters of state law and rules of procedure and evidence are not reviewable in a federal habeas petition, as "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. at 67-68.  Therefore, this claim is denied for failure to show deprivation of a federal constitutional right.

9

### III.   STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989).  Because petitioner is a pro se litigant, the Court will accord his petition liberal construction.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts. See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

10

Subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable application" clause.  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  In the "contrary to" clause, "a federal habeas court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id. at 413.  Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case."  Id.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  Id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999).

Consonant with Williams, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims.  First, the court must

11

examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.  See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  Id.  AEDPA prohibits such de novo review.  Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable.  Id.  Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  Id.; see Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002).  As to claims presented to, but not adjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See

12

Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000);
Purnell v. Hendricks, 2000 WL 1523144, at *6 n.4 (D.N.J. 2000).

Federal courts are required to apply a presumption of
correctness to factual determinations made by the state court.
See 28 U.S.C. § 2254(e)(1).  This presumption of correctness
based upon state court factual findings can only be overcome by
clear and convincing evidence.  See Duncan, 256 F.3d at 196.
Consequently, a habeas petitioner "must clear a high hurdle
before a federal court will set aside any of the state court's
factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98
(1st Cir. 2001).

## IV.   ANALYSIS

### A.   Identification Issue

In his direct appeal, petitioner raised the issue that the
trial court's admission of testimony at trial on impermissibly
suggestive identification procedures and the victim's tainted in-
court identification violated his right to due process of law and
a fair trial.  He repeats that claim here.  Specifically, he
complains that the State failed to include in discovery a mug
shot and several Polaroid shots of him that were used to identify
him, thereby leading to a impermissibly suggestive identification
and a tainted in-court identification.

A Wade hearing, see United States v. Wade, 388 U.S. 218
(1967), was conducted before trial concerning one of the robbery

13

victims' identification of petitioner after reviewing copies of four police photographs depicting only petitioner.  At the <u>Wade</u> hearing, defense counsel argued that the photographic identification procedure used had been unduly suggestive, as the victim was asked to look at a photo of the "suspect;" the identification procedure employed multiple photos of petitioner and not an array of different people including petitioner; and the inclusion of one photo that was a mug shot taken by police. Counsel further argued that the victim's retention of the photos and the subsequent reference to them undermined his ability to distinguish between the impact of the photos of petitioner and the brief opportunity to observe the assailant.  Counsel also argued that the instruction for petitioner to open his eyes wide for the photographs created an "artificial similarity" between petitioner and the victim's description.

The trial court made these findings at the <u>Wade</u> hearing:

Under the law as I understand it, the challenged procedure cannot be impermissibly suggestive, and Mr. Marain argues the five factors that he has indeed argued.

With respect to this, I don't think the testimony is that complicated.  There was an event on November 22nd, 1992 at the Ramada Hotel where Derrick Kysar and Vincent Lyles were in the bedroom at the Ramada Hotel together, room 541, in the early morning hours.  There was a knock on the door.  Mr. Lyles went to the door and opened it with a chain on it and, based upon a brief exchange, made observations of the person outside the door.  He described him as a black male, slim, dark, with round eyes, a heavy mustache, and pock marks on his face.

14

He, based upon the five or ten second encounter, Mr. Lyles opened the door, and the person he identifies as, now identifies as Mr. Pennington bursts into the room with instructions what to do.  That was an additional opportunity to observe.  I think there was an additional opportunity not only to observe the height but to observe the facial characteristics and the clothing.

Mr. Lyles described the clothing quite clearly.  He had a gray sweat jacket with an open front pocket or pouch, blue jeans.  He described, Mr. Lyles described at consider [sic] length the nature of the socks that were worn on the hands.

So the Court has an impression that Mr. Lyles is an observant person, that he had an encounter in which he genuinely beheld and participated in the experience of and remembered the event.  Mr. Lyles also described with clarity the instrument in the hands of Mr. Pennington as a utility knife.

There was ample opportunity to observe.  The description must be described as clear, rather precise, not only as to the build, height, the body framework, but the facial hair and certain marks on the face, and of course, the eyes.

Now we come to the procedure used.  And as I suggested to the witness and suggest to counsel, we're in a little bit of a now area as far as those faxes.  I suggest, and I think this is a little bit of an aside and not part of my decision in the case, I think the prosecutor has to get together and decide what they're going to do with these faxes and distribute some information to the police departments about the different procedures used so as not to lend further confusion.

I do not know of a case on faxes, do you, counsel?

MR. MARAIN: I do not.

THE COURT: So we have a situation where we have an out of the ordinary situation in the sense that the victim is now removed by some, at least four hours from the local police station.  It's not either easy or perhaps even possible for him to stop down at police headquarters after work to look at the array of photo

suspects on repeated occasions, so I think that gives
rise to the use of the technology of a fax machine.

And here we're concerned with, with the sending of one
photo and the lack of photo array.

It would seem to me that Mr. Chasnoff likens this to a
show-up.  And of course, there is some attempted
similarity because there is one, because there is only
one person.  In a show-up there would be six people in
blue uniforms and perhaps one sweaty disheveled --
counsel, do you want to suggest an adjective?

MR. MARAIN: Hapless.

THE COURT:  -- hapless suspect.  And the procedure is
allowed because of the closeness in time and the
creation of an official protective barrier by requiring
the person to be photographed and then to make an array
would take some twenty-four, forty-eight hours or a week
before the victim cold be brought to the procedure.

Now, a photo array could be faxed, but obviously here it
wasn't.  So we are confronted with the situation of
whether the procedure used here constitutes an
impermissibly suggestive one.

I think the argument might carry considerably more weight
if this were the first event, the first identification
event.  That is to say, the procedure used follows a
sequential course.  I accept that, the fact that in
identifying -- in identifying this perpetrator, the
South Brunswick police not knowing the name, not having
a description besides a general description provided by
the victim, apparently arranged for this composite to be
sent.  The composite was rejected apparently out of hand
by the two Washington victims.  Who else identified it
and who made it is not part of this.

So that event prompts further identification procedures
and is coupled with the confusion regarding the
identification of Mr. Pennington on the day that he was
indeed arrested and tied in with providing the name
James Ryder.

I cannot find that in that -- that that sort of sequence
is impermissibly suggestive.  I do not include that
failure to make a faxed photo array is improper.

16

Counsel, I think that it's suggestive that they sent an unedited mug shot.  You alluded to that, and I think that's an improper procedure.  But I do not conclude that that in and of itself constitutes an impermissibly suggestive procedure.

The fact that the witnesses continue to retain the fax is another matter that the Prosecutor has got to address, I think.  I don't think that should be allowed. These people held this for some period of time, although he testified that discarding the item was inadvertent. I don't think whether he discarded it intentionally or inadvertently makes a lot of difference. I think it just passed out of his possession after a reasonable period of time, and I think it's not unreasonable for him to refer to it from time to time as he was going through his papers.  And it might be an ordinary weeding process when making room for newer mail, which is not unusual.

The repeat uses of the fax does not seem to be a single factor that constitutes an impermissibly suggestive procedure.

I think, counsel, the question on the pop eyes and the photo array is not a factor which bears much weight at all.  As I look at these photographs and as Mr. Pennington testifies about them, he testifies he was awaken from his cell, as he was perhaps right now, and brought to the room for the photos to be taken.  Of the first photo, the photo on the left appears to me, and I think to any natural observer, to be a droopy-eyed photo as though the person were just awaken from a sleep.

Under those circumstances, it seems to me it's not unusual or suggestive that the officer or photographer would ask the subject of the photograph to open his eyes.  And I don't think that has any relationship and none has necessarily been shown to the fact that the description of the perpetrator of the November burglary was described as pop-eyed.

Well, counsel, you could say, well, the State knows everything that's in their files, and South Brunswick is a close knit operation.  But I don't find that that police conduct has any weight at all to the suggestibility of this procedure.

Therefore, then, counsel, I turn to the last question of the suspect.  I have a tendency to regard the suspect as a piece of I guess requisite police lingo.  It is certainly better than the felon in terms of police lingo, but I don't know what better word could be used.  I can't think of one.  Can you think of one?

MR. MARAIN: I can think of two.

THE COURT: What?

MR. MARAIN: The individual.

THE COURT: The citizen.

MR. MARAIN: The individual, the subject.  That's three.

THE COURT: Well, yes.  Mr. Chasnoff has a couple of suggestions himself.

MR. CHASNOFF: Well, just using those words, I can imagine a phone conversation: I'm going to send you a picture of the individual.  Would that --

THE COURT: No, that doesn't do it.  I didn't mean to side track.  I'm just concerned about, I'm trying to reflect a concern, a concern that Mr. Marain suggested to the telephone conversation which could be a highly suggestive element in an identification procedure.  But I don't think the content of this conversation, including one or two as has been developed by Mr. Marain, makes this an impermissibly suggestive procedure.

There is no suggestion, there is no statement, for example, that we have the guy who did it or we have the guy who was breaking into your hotel or any such thing as that.  We have a suspect, and I think that's relatively neutral lingo in terms of the context of this case.

In short, counsel, or in sum, I do not find and I cannot conclude that the cumulative effect of the variety of elements described and highlighted by Mr. Marain, including the use of the language, the single photograph, the unedited mug shot, the sequence of that fax, those faxes or the repeated use of the fax while it was in the desk drawer or in the possession of the victim, makes the identification procedure impermissibly suggestive.

I'm, on the contrary, satisfied there was, as I indicated, ample opportunity to make observation of the

18

person with an adequate description of that person, and there is, thus, a permissible in-court identification.

(April 6, 1994 Transcript, 53:5-59:20).

The Appellate Division affirmed the trial court's ruling on this ground without discussion.  State v. Pennington, 301 N.J. Super. 213, 216 (App. Div. 1997).[1]

An accused is entitled to due process protection against the introduction of evidence of, or tainted by, unreliable identifications elicited through an unnecessarily suggestive photographic array.  United States v. Ash, 413 U.S. 300, 320 (1973); Manson v. Brathwaite, 432 U.S. 98, 110-17 (1977); Simmons v. United States, 390 U.S. 377 (1968) (due process prohibits in-court identification if pre-trial identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification").

"[I]mproper employment of photographs by police may sometimes cause witnesses to err in identifying criminals."  Simmons, 390 U.S. at 383.  Certain procedures may heighten the risk of misidentification, including displaying a photo of only a single individual who generally resembles the person the witness saw, showing the witness photos of several persons among which the photograph of a single individual recurs or is in some way

---

[1] As noted previously, the convictions were affirmed by the Appellate Division, but the sentences were reversed and remanded for reconsideration.

19

emphasized, or indicating to the witness that police have other evidence that one of the persons pictured committed the crime. Id. Despite the risk of misidentification, the employment of photographic identification methods is not prohibited. Id. However, each case must be considered on its own facts and must be evaluated in light of the totality of surrounding circumstances, and the risk of conviction based on photo misidentification "may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." Id.

Where a trial court has failed to exclude identification evidence obtained in violation of a defendant's due process or Sixth Amendment rights, the habeas court must determine whether the failure to exclude that evidence was harmless constitutional error under Chapman v. California, 386 U.S. 18 (1967). See Moore v. Illinois, 434 U.S. 220, 232 (1977).

The Third Circuit Court of Appeals has explained that the

Simmons/Stovall[2] inquiry is essentially two-pronged.
The first question is whether the initial identification
procedure was "unnecessarily" or "impermissibly"
suggestive. This inquiry actually contains two
component parts: "that concerning the suggestiveness of
the identification, and that concerning whether there
was some good reason for the failure to resort to less
suggestive procedures." If a procedure is found to have
been unnecessarily suggestive, the next question is
whether the procedure was so "conducive to ... mistaken

---

[2]  Stovall v. Denno, 388 U.S. 293 (1967), overruled on other
grounds, Griffith v. Kentucky, 479 U.S. 314 (1987).

20

> identification" or gave rise to such a "substantial
> likelihood of ... misidentification" that admitting the
> identification would be a denial of due process.

United States v. Stevens, 935 F.2d 1380, 1389 (3d Cir. 1991)

(citations omitted).

This Court finds that the trial court did not violate

petitioner's right to due process under the circumstances

presented here.  While the trial court expressed some concern

over the procedures employed in this case, the court also noted

that the distance and inconvenience for the victim to travel to

the police station for identification procedures warranted resort

to the faxed photo.  The court also observed that the use of a

mug shot for identification purposes, while not condoned, did not

serve to contribute to any misidentification.

Most significantly, the court followed the Simmons/Stovall

test by addressing the issue of whether the identification

procedure was conducive to a misidentification.  The court found

> that Mr. Lyles is an  observant person, that he had an
> encounter in which he genuinely beheld and participated
> in the experience of and remembered the event.  Mr.
> Lyles also described with clarity the instrument in the
> hands of Mr. Pennington as a utility knife.
>
> There was ample opportunity to observe.  The description
> must be described as clear, rather precise, not only as
> to the build, height, the body framework, but the facial
> hair and certain marks on the face, and of course, the
> eyes.

(4-6-1994 Tr., 54:3-13).  Thus, the court was satisfied that there

was no propensity for misidentification by this victim, and found

21

Mr. Lyles' identification of petitioner reliable under the totality of the circumstances.

Moreover, other safeguards existed at trial after the court ruled the out-of-court identification admissible at the Wade hearing.  There is no dispute that defense counsel was afforded the opportunity to cross-examine the complainant, Mr. Lyles, at the Wade hearing and at trial as to the reliability of his identifications.  Defense counsel had ample opportunity to cross-examine the witness as to the accuracy of his identification as well as the reliability of the identification procedures used.

Therefore, this Court finds that the trial court's Wade hearing and the admission of the out-of-court and in-court identifications did not result in a decision that was (1) contrary to clearly established federal law, (2) an unreasonable application of clearly established federal law, or (3) based on an unreasonable factual determination.  See 28 U.S.C. § 2254(d).  The state court correctly identified and applied the governing legal rule and reasonably determined the applicable facts.  Accordingly, this claim for habeas relief is without merit.

**B.   Ineffective Assistance of Trial Counsel**

The right to counsel is the right to effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).  A petitioner seeking to

22

prove a Sixth Amendment violation must demonstrate that counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct. Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir. 2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id.  Furthermore:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996).

If able to demonstrate deficient performance by counsel, the petitioner must also show that counsel's substandard performance actually prejudiced his defense.  Strickland, 466 U.S. at 687.

Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. Id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  Id. at 697; see also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

**1.   Mug Shot Issue.**

Petitioner here asserts that his trial counsel was unaware that he had been identified by a mug shot even though the defense of the case was based on misidentification.  In addition, counsel submitted the mug shot to the jury without redacting information as to petitioner's prior arrest.

Petitioner raised the issue about the mug shot in his first state PCR petition.  At the hearing conducted on September 28, 2001, the PCR court found that Petitioner had failed to make a showing that his trial counsel was ineffective.  The court first set forth the standard under Strickland.  Then, the court discussed each claim of deficiency alleged.  Pertinent here, the court found: "The fact that a mug shot or a photograph may have been remitted or exhibited to the jury without having been

24

truncated or redacted in some way does not in and of itself demonstrate the kind of prejudice that courts generally consider as ineffective assistance of counsel." (9-28-2001 PCR Hearing Tr. at 23:24-24:4).

In an opinion issued on November 18, 2003, the Appellate Division affirmed the state PCR court ruling, essentially adopting the trial court's oral decision rendered on September 28, 2001. State v. Pennington, No. A-1298-01 (App. Div. Nov. 18, 2003) (slip op. at 5), certif. denied, 179 N.J. 310 (2004). In rejecting all of petitioner's claims of ineffective assistance of counsel, the Appellate Division stated: "Indeed, defendant's trial strategy, although unsuccessful, was based almost entirely upon challenging his identification as the perpetrator of these crimes. Evidence of defendant's involvement and guilt in this crime spree was overwhelming." Id. at 4.

The State also points to the trial record in arguing that trial counsel's decision to allow the mug shot to be shown to the jury was a matter of trial strategy that should not be second-guessed, and in fact, did not demonstrate deficient performance based on the circumstances of this case. Quite simply, trial counsel's decision to have the mug shot shown to the jury was based on his strategy to undermine Lyles's identification of petitioner, by calling attention to the lack of detail and absence of pock marks, which was an important part of Lyles's description of the perpetrator. Counsel addressed this in his summation.

25

This Court is satisfied from its review of the state court rulings on this issue that petitioner has failed to show, as required under 28 U.S.C. § 2254(d), that the actions of the state courts resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court in <u>Strickland</u>, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, this claim of ineffective assistance of trial counsel is without merit.

**2.   Plea Bargain Issue**

Petitioner also alleges that counsel withheld information from petitioner that would have afforded him an opportunity to accept a favorable plea bargain with less serious charges before the superseding indictment adding a kidnaping charge had been returned. This claim was raised in his second PCR petition because, as petitioner claims, he did not become aware of it until after his trial counsel testified at petitioner's first PCR proceeding. However, the second PCR denied relief on December 8, 2005, and petitioner appealed.

The Appellate Division affirmed denial of the second PCR petition, ruling as follows:

> Having reviewed the record, we conclude that these contentions are without sufficient merit to warrant extended discussion in a written opinion. <u>R</u>. 2:11-3(e)(2). We add only the following brief observations.

26

> We previously rejected defendant's claims that his trial
> counsel was ineffective, R. 3:22-5, and he failed to
> present a prima facie case that his PCR appellate
> counsel was ineffective. State v. Preciose, 129 N.J.
> 451, 463-64 (1992); Strickland v. Washington, 466 U.S.
> 668 [] (1984); State v. Fritz, 105 N.J. 42 (1987).

State v. Pennington, 2008 WL 150048 at *2 (N.J. App. Div., Jan.
17, 2008).

This Court again is satisfied from its review of the state
court rulings on this issue that petitioner has failed to show, as
required under 28 U.S.C. § 2254(d), that the actions of the state
courts resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established federal law,
as determined by the Supreme Court in Strickland, or resulted in
a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the state court
proceedings.  Petitioner did not establish any factual basis for
this claim about trial counsel, and there was no evidence to
support such a claim.  Accordingly, this claim of ineffective
assistance of trial counsel is without merit.

**C.   Elements of Kidnaping Offense Not Satisfied**

Petitioner next claims that all of the statutory elements of
the kidnaping charge were not proven at trial.  He raised this
claim on direct appeal, as Point IV in his appellate brief,
arguing that since the confinement of the victims was merely
incidental to the underlying crime of robbery, a necessary
element of kidnaping was not established.

27

As noted above, the Appellate Division rejected all of petitioner's claims on direct appeal that were not related to the sentencing issues, finding them to be without merit. Accordingly, where Petitioner has failed to show that the state court ruling was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, this claim is without merit.

**D.   Excessive Sentencing Claim**

Petitioner also contends that the New Jersey Supreme Court instructed the trial court on remand to remove the parole eligibility, but the resentencing court imposed a 25-year parole bar.  He asserts that this sentence is excessive.

This Court finds no merit to Petitioner's claim.  The New Jersey Supreme Court merely ruled that the decision to impose a parole bar on an extended life sentence is discretionary, not mandatory.  The Court made no finding that a parole bar of 25 years on an extended life sentence was excessive.  Specifically, the New Jersey Supreme Court stated:

> Although the decision whether to impose a parole bar on a life sentence is discretionary, once the court decides to impose a parole bar on an extended term of life, that bar *must* be twenty-five years.  The 1979 consensus amendments to <u>N.J.S.A.</u> 2C:43-7b changed the range of such a parole bar from "up to 25 years" to "a term of 25 years."  In other words, the decision whether to impose

28

> a parole bar is discretionary, but there is no
> discretion in setting the bar.
>
> We conclude, therefore, that the sentencing court was
> partially correct when it concluded that it had no
> discretion when it imposed twenty-five years of parole
> ineligibility.  Rarely, however, will a sentencing court
> be justified in declining to impose a parole bar of
> twenty-five years after imposing an extended term of
> life.  "[I]t would be anomalous that an extended
> sentence of fifty years results in ... more real time
> than" an extended term of life without a parole bar.
> [State v.]Dunbar,[]108 N.J. [80,] 95, 527 A.2d 1346
> [(1987)].  Nonetheless, we believe the sentencing court
> should reconsider the parole bar for kidnaping in view
> of our holding.

State v. Pennington, 154 N.J. 344, 360 (1998).

This Court finds no admonition to the trial court on remand to refrain from imposing a parole bar on petitioner's extended term sentence.  The New Jersey Supreme Court simply required the remand court to reconsider the sentence because a decision to impose a parole bar on an extended term is discretionary and not mandatory.  Therefore, this claim for habeas relief from a purportedly excessive sentence is without merit.

### V.   CERTIFICATE OF APPEALABILITY

This Court must determine whether a certificate of appealability should issue.  See 3d Cir. Local App. Rule 22.2. The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial

29

showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.  An appropriate Order and Judgment follows.

<u>    s/ Mary L. Cooper    </u>
**MARY L. COOPER**
United States District Judge

Dated:    July 6, 2009